And we go to our third case for today, Baker Hughes v. Joshi Technologies. Thank you. Please proceed. May it please the court, my name is Steve Harris and I'm here for the appellant to Joshi Technologies. In the briefing, there's reference to China Mint Metals v. Qin Mei, that's a 3rd Circuit 2003 decision. I think that what makes that case so important is that it was cited by the district court, it was cited by Baker in his response, and it was cited by Joshi on three different pages of its brief, 18 through 20. In refocusing on that case, one thing that I think flew over the top of my head when I read it the first time, but not the second time, and that is a concurring opinion on that case was written by Judge Alito, who was in the 3rd Circuit at that time, of course now Justice Alito. That concurring opinion is a remarkable kind of elaboration on what the 3rd Circuit dealt with regarding the importance of Article 4. Judge Alito wrote that this providing the agreement in writing signed by the parties, as well as the arbitration award itself, is a critical component of bringing an action under Article 5. Was there a translation in that case? Was there a translation? Yes. My recollection in rereading it there was, because the arbitration occurred in Hong Kong, and I'm assuming although English is prevalent in Hong Kong, I believe that there was a translation, and the court simply makes the observation in passing, and there was no objection to it, that all of the technical requirements regarding agreement in writing and the arbitration award were in fact filed with the case. What Judge Alito points out is that even if these two items are submitted, a purported agreement in writing and an arbitration award, I suppose the loser at the arbitration has the right to raise the defense or the argument or the challenge that the agreement that's been submitted to the court is invalid. In that case, Chi-Meng claimed that the signatures were not authorized. They were in fact forgeries. Here we have literally the identical circumstance in which Joshi says, I didn't sign the agreement, but when that issue is framed before the district court, someone protests. They object and say there's no valid written agreement. As a result, the court, as Judge Alito points out at the tail end of his concurring opinion, there's got to be an evidentiary hearing. The district court must make evidentiary rulings, and that's where it lands. Let me ask you this. So I was reading the convention, and at paragraph 1, you have to have a duly authenticated original award or a duly certified copy thereof. Paragraph 1B, the original agreement referred to in Article 2 or a duly certified copy thereof. Then it goes to paragraph 2, but there's no and, there's no or, it's just paragraph 2. And it said, if the said award or agreement is not made in an official language of the country in which the award is relied upon, the party applying for recognition and enforcement of the award shall produce a translation of these documents into such language. The translation shall be certified by an official or sworn translator or by a diplomatic or consular agent. And I guess my question is this. Just reading that, it occurs to me that maybe paragraph 2 takes away requirements 1A and B. That if it's in a foreign language and you provide a certified translation of 1 and 2 in the award, that that's good enough. Because there's certainly not something that says you have to provide both. There's not an and in there. Your Honor, I have never, at least in my research, have not seen any court decision which ruled that somehow a translation acts in substitution for the first section, namely thou shalt provide a copy of the agreement. I haven't either, but couldn't that be plausible? Because if you give me something from Bolivia, I can't read it. I'm going to look at the translation. And because the translation's certified, I don't have to get somebody to go look at 1A and 1B again. Because I have a certified translation, I can fully rely upon it. Your Honor, this court looked at this issue in 2020 in U.S. v. Chavez. That's 976, Fed Third, 1178, albeit not in the context of arbitration, but in the context of the admissibility of a translation. And in that case, the court said that the Tenth Circuit has a 40-year history of never allowing, never allowing the admission of a translation without the source recording. True, but there wasn't a statute either, right? But in this context, Your Honor, to me, the better reading of Article IV of the Convention is that it does say thou shalt submit the original. And that's the original agreement and the original award. Then it goes to this next section and says, by the way, if it's not in the language of the enforcing court, then thou shalt also supply. No, no, it doesn't say thou shalt also. It says thou shalt. Thou shalt. Yeah. And so I think the better reading there is we can't dispose of that because then we go back to square one. And that is I have a translation, but there's no requirement that the person who succeeded at arbitration submits the original award so I myself can challenge the official version that's before the court and admit it in accordance with Article IV. Sure you can. You can bring your own translator and the original award in, because if you give me the award and the original agreement, I can't read it anyway without you supplementing it with a translator. You have the opportunity to disagree with the certified translation and say it's inaccurate. But that places the burden on me and skips over the responsibility of the successful party in arbitration. It's your motion, counsel. That puts the burden on you. It's your motion to strike it. Well, in this context, Your Honor, and under Article IV, as Judge Alito points out, the burden rests on the applicant, the entity seeking to enforce. Now here we've got an arbitration agreement. Even if you look at and give deference to the translation, that agreement is not signed by and it's not a contract by Baker Hughes LLC. It is Baker Hughes, Inc. Well, I've got two questions for you, counsel, going along first with what Judge Carson's asking. You said the better reading of it. And as I recall from my ninth grade English teacher who didn't have a whole lot of success with me, but in diagramming a sentence, have you diagrammed A and B versus paragraph number two of this statute? Your Honor, I haven't. I studied transformational grammar in college. Well, that's my point. What is missing in item number two as for what's required in item A and B? What's missing? Because they both say that you shall. So when I've got a complete certified copy translated of the entire deal, and it refers into to the award or the agreement, if I have that entire document in front of me, doesn't that make A and B comments for purpose? Well, I think that that gets to Judge Alito's point. It gets to my point, counsel. I'm not concerned. Judge Alito has made his point. I'm just struggling with that issue. So you've got to help me out because then my final question of the two that I wanted to ask you, then what's the remedy? Do they get kicked out of court completely when they didn't do item number one, or do we send it back and ask the district court, have them file in accordance with number one, A and B? It's a remedy question. It goes, for example, like in your brief, you didn't give us what the standard of review is. That's a technicality. So would we throw him out of court? Or why shouldn't we throw you out of court for violating a technicality? What's the remedy that's available in this case? Well, I think the remedy is agreement. To do what? To give them an opportunity to follow Article IV, the convention. Here's the Spanish language version. Here's the agreement. We've challenged the validity of the agreement. Granted, these two are referred to as technicalities by the district court, but they are, if you ignore them, you render the statute meaningless, and as the court's word is, superfluous. We can't do that. All of case authority says we don't read statutes to render them superfluous. So if we say, well, three is going to control, namely, submission of the translation, and we skip over the first two, we have rendered them superfluous, and we can't do that. What, of course, is missing there is there's no and and there's no or. And so I would submit again that the better reading of the statute is you've got three rules here, there's no and or or, so you comply with all three. That only makes sense if the original award and contract, agreement to arbitrate, is in a language other than English, the court in which it's being enforced. If it was being enforced in China, there'd have to be a Chinese translation. Let me ask you another. Let me leapfrog up to another issue here, the Baker LLC versus Baker Inc. issue. Was that raised in the arbitration? Was that an actual issue in the arbitration where it was defended on that basis? There is nothing in the arbitration award that deals with that. I understand that. And I don't have in-depth knowledge as to what the going back and forth was. I guess at this point we have no evidence of whether both parties knew it was LLC or whether it was how it ended up in the arbitration agreement as LLC as opposed to Inc. In fact, we don't have any evidence before this court that the LLC even existed in 2013 when the contract signed or was even doing business, which casts a dark light or some kind of light on the argument which first appears in a footnote in a reply brief by Baker Hughes. It's footnote number one. And it says, oh, by the way, Judge, there is this discrepancy. But that was fixed. All you've got to do is look at the style of the case and look at the body of the decision. That's what they asked the court to focus on. It's all there. So could the district court exercise its discretion and say that's a scrivener's error, that it was a misnomer, so no problem? No, I don't think you can exercise discretion in the absence of evidence. There's no affidavit from Baker Hughes that says that it was a mistake or that they were doing business or that it's a scrivener's error. It's a statement by counsel in a footnote in a reply brief. That's the best they had. Did you contest it at the district court? I'm sorry, Your Honor? Did you contest that at the district court? Did you affirmatively say that it was not LLC, it was Inc.? Or did you just say there was a discrepancy so you can't tell? I made the point that the agreement translated, and again suffering from whether that's admissible evidence, but I pointed to the district court and I said, Judge, if you look at this translation, it says the contract was signed by Inc. and not by LLC. That was a point. And so what's the response in a reply brief? Oh, Judge, just, you know, that's nothing. That was a scrivener's error without any evidence. They had plenty of opportunity to present that. The district court then proceeds forward and says, I'm grasping at straws, but indeed this is a very important issue. It is their burden to present under the convention an agreement to arbitrate signed by the parties. At threshold level, Baker LLC did not sign the agreement. So, okay. Before you go ahead, can I just pick up on, so if we find for you on the first issue with regard to the, is it 1A, 1B, and 2, or 1, 2, 3, as you say, and we remand, we don't reach anything else in the case? Is that your position? I think that it is, Your Honor. Okay. I mean, my ultimate argument was on jurisdiction. Citing this court to Czarina, saying, you got to satisfy all these elements if you're not, there's no jurisdiction. The courts have looked at it in different ways. Some look at it as a jurisdictional issue, like a 12B1 motion. Others look at it, no, this is like a 12B6 motion. I'm not suggesting that either one is correct, perhaps a combination of the both. But I think the remedy here is we send it back to the district court and let Baker Hughes put up or shut up. Thank you. I'll reserve the balance of my time. Thank you. Counsel? Your Honor, Your Honors, the first point that was raised was, well, gosh, there's no Spanish agreement and there's no Spanish award. So what do you do? Well, you go to, well, I don't know if any of you three are fluent in Spanish, but I'm not and Baker Hughes isn't and Judge Kern I don't think was. But what that was intended to do is exactly what you were talking about, Judge Carson. It says, we have an alternative here. And the alternative is, let's find out what it really says. Let's get a translation certified. The problem with that is the same, you both have the same problem is you don't have an or in there. I have neither a disjuncted nor a conjuncted. By the way, it's 1A and 1B. And then separately it's two with no conjuncted nor disjuncted between 1A and B. So the purpose of two is to make it possible for this court and the litigators to have something to read. And if they have something to read, it renders moot Article 1A and 1B. But you agree we can't look at the translation and see the party signatures, right? You can absolutely find out if there were signatures by looking at the translation. And it's pointed out that the translator said, I see the signatures, but they're illegible, so I'm going to write down the words illegible in the translation. And that's what he did, and that's what the registrar of the arbitration committee also certified it to be. Is that in the district court record, what the registrar said? Yes. Okay. It is. So there is this chamber of commerce called the American Ecuador Chamber of Commerce. And within it is the body that takes care of arbitrations pursuant to the New York Convention. And that director appointed the arbitrator. And at the conclusion of the award, they drew up the award in Spanish, but when it was translated, the translator said, signature illegible. But it was signed. Okay? Now. So let's talk about that. I mean, that's a problem. Isn't that a problem for you? No. Oh, sure it is, because he's saying, they haven't proven that my guy even signed this. And the best you can do is an illegible signature. No. The illegible signature means that the illegible signature on the arbitration agreement is different than the signature on the MSA. Okay? So I might have been talking about one thing, and you talked about the other. I think you were. Were you talking about the arbitration agreement? Yes. Okay. Or the arbitration award, I guess. Yeah, the arbitration award. Okay. Let's talk about the MSA. And the MSA is where the signatures are important, right? That's right. They are. So tell us about the MSA. Okay. So the MSA was signed. It said the MSA is between Baker Hughes Services International, Inc., on the one hand, and the Three Amigos. I don't know if you remember, but there was a consortium, and Josh was one of the members of the consortium. And there was another agreement between the three that said, anybody can sign something, we're all three bound. So Josh, he says, well, I didn't sign it. And the court said, well, that doesn't make – the arbitrator first said, that doesn't make any difference. You entered into an agreement with the other two that said they can bind you. And so, therefore, they did bind you when they signed the MSA and not you. And so Josh, who says, hey, Baker, you didn't sign this thing, they also say, well, neither did we. So Josh is saying, I get to not sign it, but Baker has to sign it. So here's what happened. So Baker submits its arbitration claim. It's identified as clear and concise, and the arbitrator is appointed. And the arbitrator immediately – so this is after six months of mediation, not six months in a row, but it took six months for them to complete the mediation. So the mediator – the mediation's finished, the arbitrator is appointed, and the first thing he does is he has a substantiation hearing because there's an objection as to whether or not he has the authority to arbitrate, to determine whether or not there is an arbitration agreement. And so the arbitrator says, I do have – it's that competence-to-competence argument, and I don't think it was brought out here. But what I'm getting to is they get the claim, and the claim is entitled Baker Hughes Services International, LLC. That's what the arbitrator sees, versus the three, including Joshie. So he sees that, and then he goes through the evidence, and he sees six – five invoices from Baker Hughes, LLC. He sees the witnesses' testimony, six expert witnesses testified. He goes through and sees all the record of who is there. Counsel, that's great because you're arguing to us the facts of the case, and I'm not at all concerned necessarily with the facts. I'm concerned with the reading of that statute, and I believe it's the Third Circuit case, which Judge Alito is no slouch of a justice now as far as I'm concerned. But anyway, what I'm having trouble with is, do I go with the Third Circuit case and say that under that statute, and as you read it, you were obligated, you had the burden of presenting that. You didn't do it, but you have the authentication and the translation. And I'm saying I don't see necessarily a difference there. But if we go one way, we're going to create a split in the circuits. So that's where I am in regards to this whole case. And then you get to your remedy. What happens if we side with your opposition? Do we throw you out of court completely, or do we just remand and say to the district judge, let you go ahead and file the original award and the original agreement? That's what I need to hear from you. The reason why this court should confirm Judge Kern's decision, his opinion and order, is because he figured out there is absolutely nothing to be gained by having Baker on remand, for example, go back and say, OK, here's the Spanish version. Remember, it's very important that one of the things that he decided was that Joshie never complained about the genuineness of the translation. He never said, I've got my own translation of the Spanish language, and it's different than what they're saying. This is a forgery. Joshie never did that. They relied throughout their argument, both to the arbitrator. Well, not to the arbitrator, because that was in Spanish. They relied throughout their argument to Judge Kern and to you on the translation that we have presented, which means it's moot, as a matter of practicality, that we didn't have the Spanish language. What happens if it gets remanded and we submit to Judge Kern the Spanish language? Nothing. He's going to affirm it anyway, because it's exactly the same thing that he relied upon in affirming the decision. It's a waste of everybody's energy, time, expense. But it's a statute. It is a statute. As he said, in his opinion, that most people don't even argue Article IV. They go straight to it. What he said was we don't, and he quoted the Cosmos case, which is a great case, which also is involved in the police case and the Bergeson case, talking about how broad the court's rights are to interpret statutes. You get to interpret the specific language of a statute, and you guys do it all the time. Well, how do we review what the district court did? We review it. We get to review it de novo so we can disagree. Do you agree with what the district court did? Here's what the district court did. My question is, what's our standard of review? It's a review as a matter of law. We're looking at interpretation of a statute. So we could disagree as a matter of law with what the trial court did. Well, I guess you could if you wanted to say, yeah, the district court's wrong. I think what he's getting at is we look at it without any difference at all. We look at it fresh, as though it were presented to us in the first instance. Right. And so if it's presented to you in the first instance, you do the exact same thing that Judge Kerr would have done. Because you'd have said, first thing. I don't know. I heard Justice Kagan when she said we're all textualists now. That's why I'm reading what the statute says. We all have different opinions on which way the Supreme Court's going. Can I just stop you there? What is your interpretation of the statute? OK. And let me maybe juxtapose it. You talked about it before. Yes. Which is a treaty, by the way, not a statute. OK. What is your interpretation of the language? And what I think your opposing counsel says is that there's a requirement, and there's another requirement, and then there's a third requirement. And you disagree with that. And let me just ask you, you agree there's actually a first and a second requirement. But in terms of the third requirement, you're saying that could be the only thing, I guess. That the translation could be the only thing. And to tie that back to the language, don't you, you may not have an and or an or, but you do have an if. Right? And could you address the if, which is if one or two is not in the language, is in another language, then you have to turn in or supply a translation. So it doesn't, I mean, I think I heard you say it renders the first two moot. Right. But that's not really it, is it? It's that they're just in a different form if the if applies. Yeah. So would the court be at a loss if the original version caught on fire and was destroyed, and you didn't have anything to present? But you do have the translator before it got destroyed. He said, I translate the MSA and the award. Not a copy of it, but the translation. My translation is of the award. And then what do you do? Well, you go to easily number two, which says, if you've got, and here's how Judge Kern interpreted that. I guess what I'm saying is you get to, under certain circumstances, use a broad interpretation of the law to support justice and equity and allow. So I just have to stop you there. So you actually don't have a textual argument? No. Here's what I do have. You do have a textual argument. Well, I'm not sure. I'm really not. Where there are no true signs of concern of jurisdiction or authenticity, and we don't have either of those concerns, relying on Article IV to deny recognition has been classified as merely grasping at straws, attempting to persuade the court to refuse to confirm the award on the basis of a mere technicality. So is there a case on, I mean, that's what Kern said, but we're reviewing him, so we don't have to give any difference there. Is there a case that has held that in this context, or even one similar? There are no cases in which Baker Hughes, the Baker Hughes in the case, didn't show up with the original Spanish language, one way or the other. No cases. There have been no cases that said, hey, panel of the Tenth Circuit, you guys have to remand this case or just throw it out because there's no original. There's no cases like that. There's none. And so you were right in the very beginning. Why don't we just rely upon the true and accurate, authentic certification that Joshie has never said there's one thing wrong with it. There's not one word that's wrong in that translation from Spanish to English that the court should pay attention to because if there was something wrong, I guarantee you they'd bring it out to you, and they didn't. And they relied upon the English language to argue their case to Judge Kern and to argue the case to you three. It was, in fact, attached to one of their motions, wasn't it? Before Judge Kern. Yeah, they did, and they put it in Spanish. And so what good is this? Why are we doing this? When there's no true concerns of jurisdiction or authenticity, relying upon those two provisions of Article IV, and I added that language, is classified as merely grasping straws. And there's also a better way. Counsel, your time has expired. Okay. Thanks a lot. Thank you. I would urge this court to do precisely what the Third Circuit did in Midmetals, and that is they faulted the district court by not having an evidentiary hearing once the issue was raised that there was no valid agreement. Here, we've legitimately raised exactly that argument. When I filed my objection and response, I thought Baker Hughes would surely submit the Spanish language version of the arbitration award. I thought for sure they would submit the Spanish language version of the agreement. They never did. But it's a mandatory requirement. Certainly under Zarina, it's jurisdictional. Even the Third Circuit seems to suggest that you've got to provide that. Once you do, then you go to has there been a challenge of the validity of the agreement? There has been. Under Midmetals, I'm entitled to my day in court. Can I ask one question? Absolutely. Do you concede that if this were remanded and they provided both of those for the record, that they've complied with 1A and 1B at that point? Yes. I think the standard amongst all the cases, and there are several that deal with this issue, well, what happens if there's imperfections on the certification? One case was the lawyer that was in London. He just signed off and said, this is true and correct. The court said it's good enough for me, and that held up. Okay. Thank you. Thank you. Thank you, counsel, for your arguments. And you are excused, and we're going to take a break.